**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION**

| | | |
|---|---|---|
| METROPOLITAN TRUCKING INC.,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, UNITED STATES DEPARTMENT OF TRANSPORTATION, PATRICK D. NEMONS, Director, Office of Safety Programs, FMCSA, in his official capacity,<br><br>Defendants. | ) | **Case No.** |

**VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF**

Plaintiff Metropolitan Trucking Inc. ("Metropolitan") brings this action against Defendants, the Federal Motor Carrier Safety Administration ("FMCSA"), the Department of Transportation ("DOT"), Patrick D. Nemons, Director, Office of Safety Programs, FMCSA, in his official capacity ("Nemons") (FMCSA, DOT, and Nemons together, the "Defendants"). In support thereof, Metropolitan alleges as follows:

## Introduction

1. Metropolitan seeks a temporary restraining order against Defendants and a preliminary injunction requiring Defendants to restore its listing on the Entry-Level Driver Training Provider Registry ("TPR"), from which the FMCSA removed it on August 31, 2026 without prior notice of the ground asserted and any assurance of a prompt post-deprivation hearing or a prompt decision.

2. On August 31, 2026, the FMCSA issued a Notice of Emergency Removal that shut

down Metropolitan's operations effective immediately. The purported ground was that Metropolitan's graduates lacked English language proficiency. The August 31, 2026 Notice of Emergency Removal is attached hereto as **Exhibit A**.

3. Three days earlier, on August 28, 2026, the FMCSA issued a separate Notice of Proposed Removal identifying a single, unrelated curricular item—hazardous materials—granting Metropolitan thirty days to respond and sixty days to cure. Both notices were delivered on the same day. The August 28 notice does not mention English proficiency. The FMCSA's own audit, conducted six weeks before the emergency removal, found Metropolitan compliant in every respect except hazardous materials. The August 28, 2026 Notice of Proposed Removal is attached hereto as **Exhibit B**.

4. Upon information and belief, Metropolitan's removal was the eleventh of 103 emergency removals that the FMCSA executed on the afternoon of August 31, 2026, in a span of six hours and eleven minutes, at an average interval of 3.6 minutes per removal. Before that day, only six emergency removals existed in the entire history of the TPR. Metropolitan received no pre-deprivation notice of the English-proficiency ground, no opportunity to respond, and no hearing of any kind.

5. The emergency removal has destroyed Metropolitan's business. Students cannot complete their training. Employees face layoff. Absent immediate relief from this Court, Metropolitan will be forced to close permanently—a harm that no after-the-fact administrative review can undo.

## PARTIES

6. Metropolitan is a Florida corporation with its principal place of business at 398 NE 79th Street, Miami, Florida 33138. Metropolitan is an entry-level driver training provider

authorized to deliver Class A, Class B, Passenger, and School Bus training curricula. Mr. Magdiel Fernandez serves as Director of Operations.

7. The FMCSA is an agency of the United States within the DOT. The FMCSA is responsible for administering the TPR under 49 U.S.C. § 31305 and 49 C.F.R. Part 380, Subparts F and G.

8. The DOT is a cabinet-level department of the United States government and the parent agency of the FMCSA.

9. Nemons is the Director of the Office of Safety Programs within the FMCSA and is named in his official capacity. Nemons signed the August 31, 2026 Notice of Emergency Removal that is the subject of this action. *See* **Exhibit A**.

## JURISDICTION AND VENUE

### A. Subject-Matter Jurisdiction

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution of the United States. Metropolitan asserts claims under the Due Process Clause of the Fifth Amendment and seeks to enjoin federal agency action that exceeds the scope of the agency's delegated statutory authority.

11. This action does not seek judicial review of a "final order" within the meaning of 28 U.S.C. § 2342(3)(A). The FMCSA emergency removal at issue is not a final agency order. The FMCSA's own regulation, 49 C.F.R. § 380.723(d)(2), expressly designates the FMCSA's decision on administrative review as "final Agency action." No decision on administrative review has been issued. Because no final agency action exists, 28 U.S.C. § 2342(3)(A) does not divest this Court of jurisdiction.

### B. Venue

12. Venue is proper in this District under 28 U.S.C. § 1391 because Metropolitan resides in this judicial district and a substantial part of the events giving rise to the claims occurred here, including Metropolitan's operation of its training facility, the FMCSA audit, and the delivery of the removal notices.

**C. Sovereign Immunity**

13. Sovereign immunity does not bar this action.

14. 5 U.S.C. § 702 provides a freestanding waiver of sovereign immunity for this action. It states that "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States."

15. This waiver is not limited to claims that challenge action under the Administrative Procedure Act. *See Miccosukee Tribe of Indians of FL v. United States,* 680 F. Supp. 2d 1308, 1316 (S.D. Fla. 2010) ("Section 702 is, however, a general waiver of sovereign immunity for suits against the United States seeking nonmonetary relief, even if the claim does not arise under the APA.").

16. Metropolitan seeks only injunctive relief—quintessentially nonmonetary relief. Section 702 therefore waives sovereign immunity as to the relief requested herein.

## STATEMENT OF FACTS

**A. The July 13, 2026 Notice of Investigation**

17. On July 13, 2026, the FMCSA issued a Notice of Investigation signed by Alfredo Hernandez, CDL Specialist, Southern Service Center. The letter stated that the FMCSA had

identified Metropolitan as a training provider in need of targeted review on July 1, 2026, and identified the scope of investigation as 49 C.F.R. Part 380, Subparts F and G.

18. The Notice of Investigation was facially defective. The letter identified the entity under investigation as the CDL Schools LLC—not Metropolitan. The underlying file was titled "Draft." The letter contained unfilled template placeholders. It demanded production of Metropolitan's entire documentary record within 48 hours of issuance. The Notice of Investigation did not mention English language proficiency or hazardous materials. A copy of the Notice of Investigation Letter is attached hereto as **Exhibit C**.

19. Metropolitan complied fully and promptly. Mr. Hernandez appeared in person at Metropolitan's facility on July 15, 2026, and was provided a binder and an electronic storage device containing all requested materials. Nothing was withheld.

**B. The July 15, 2026 On-Site Audit**

20. On July 15, 2026, the FMCSA completed an on-site audit of Metropolitan. The FMCSA's investigation worksheet from that audit—which the FMCSA later transmitted to Metropolitan as a copy of the evidence upon which it relied—recorded the following findings:

21. Metropolitan's Class A curriculum "passed through the Gem successfully with zero issues flagged" and "all elements met for Class A."

22. Equivalent findings were recorded for Class B, Passenger, and School Bus curricula.

23. The provider's assessments sufficiently cover each unit of instruction.

24. All seven Training Certification items were marked "Yes."

25. The self-certifications required by 49 C.F.R. § 380.707(a) were marked "Yes."

26. One item did not pass: hazardous materials.

27. The field designated "Safety Investigator" on the worksheet was left blank. A copy

of the Worksheet is attached hereto as **Exhibit D**.

**C. The August 28, 2026 Notice of Proposed Removal**

28. On August 28, 2026, the FMCSA issued a Notice of Proposed Removal under 49 U.S.C. § 31305(c)(5) and 49 C.F.R. § 380.723(b), signed by Carlos Dequina, Acting Division Chief, Office of Safety Programs. *See* **Exhibit B**.

29. The sole stated ground for proposed removal was that Metropolitan's hazardous-materials curriculum omitted components E1.1 through E1.13 of Appendix E to Part 380. *See id.*

30. The Notice of Proposed Removal granted Metropolitan thirty days to respond and sixty days to complete corrective action. It expressly offered the alternative of removing hazardous-materials training from the types of training Metropolitan offers. *See id.*

31. English language proficiency does not appear anywhere in the twenty-two-page Notice of Proposed Removal. *See id.*

**D. The August 31, 2026 Notice of Emergency Removal**

32. On August 31, 2026—three days after issuing the Notice of Proposed Removal—the FMCSA removed Metropolitan from the TPR effective immediately, by a Notice of Emergency Removal signed by Nemons under 49 U.S.C. § 31305(c)(5) and 49 C.F.R. § 380.723(e). *See* **Exhibit A**.

33. The operative ground for the emergency removal was English language proficiency of Metropolitan's graduates—a ground that had never been communicated to Metropolitan in any prior notice. The Notice of Emergency Removal cites internal enforcement policy MC-SEE-2026-0002. *See id.*

34. At paragraph 6(k) of the Notice of Emergency Removal, the FMCSA concedes that its regulations do not require that ELDT instructions be provided in English. *See id.*

35. Both the August 28 Notice of Proposed Removal and the August 31 Notice of Emergency Removal were delivered to Metropolitan on the same day, August 31, 2026.

**E. The 78-Driver Dataset**

36. The Notice of Emergency Removal enclosed a spreadsheet of 78 driver-trainee records as its evidentiary basis. *See id.* Analysis of the FMCSA's own data reveals the following:

37. Every inspection in the dataset occurred on or after June 25, 2025—the date on which English language proficiency failure first became an out-of-service condition. *See* Commercial Vehicle Safety Alliance, *Non-Compliance with English Language Proficiency Regulation Takes Effect as an Out-of-Service Driver Violation* (June 25, 2025), available at https://cvsa.org/news/elp-oosc-06252025/.

38. Yet 71 of the 78 drivers (91%) were certified by Metropolitan before that date. *See id.* The FMCSA applied a standard retroactively to drivers who were certified when that standard did not exist as an enforcement criterion.

39. The temporal gaps between training and inspection are enormous. The median gap is 497 days. The mean gap is 561.6 days. The longest gap is 1,514 days.

40. At least one record in the dataset is chronologically impossible. The record of Raudel Acosta Hernandez shows a training date of July 31, 2026, and an inspection date of September 7, 2025—327 days before he was trained. *See id.* The presence of this record calls into question the reliability of the entire dataset.

41. Notably, 76 of the 78 records (97.4%) were within the FMCSA's own system on July 15, 2026, the date of the on-site audit. *See id.* The FMCSA possessed virtually all of the evidence it now relies upon at the time it found Metropolitan compliant and took no action regarding English proficiency.

**F. The Mass Removal Action of August 31, 2026**

42. Upon information and belief, Metropolitan's removal was the eleventh of 103 emergency removals that the FMCSA executed on the afternoon of August 31, 2026, in a span of six hours and eleven minutes, at an average interval of 3.6 minutes per removal. Before that day, only six emergency removals existed in the entire history of the TPR.

43. The pace and scale of the mass removal action are inconsistent with any individualized determination that each of the 103 providers posed an imminent threat to public safety requiring emergency action.

**G. The Registry Record Discrepancy**

44. The FMCSA's TPR registry record shows that Metropolitan's location record was updated on August 28, 2026, the same day as the Notice of Proposed Removal and three days before the Notice of Emergency Removal. The public removal reason is recorded as "Emergency Removal" but the internal removal reason is recorded as "Involuntary Removal."

**H. Harm to Metropolitan**

45. The emergency removal has shut down Metropolitan's operations entirely. Students cannot complete their training. Employees face imminent layoffs. Metropolitan faces permanent closure. The harm is ongoing and compounds with each passing day.

**COUNT I**

**VIOLATION OF THE FIFTH AMENDMENT—PROCEDURAL DUE PROCESS**

46. Metropolitan incorporates by reference all of the allegation in paragraphs 1-45 above in support of its claim for violation of the Fifth Amendment to the United States Constitution against the Defendants as if fully set forth herein.

47. Metropolitan possesses a constitutionally protected property interest in its listing

on the TPR.

48. The Supreme Court has held that a license whose continued possession is essential to the pursuit of a livelihood is a constitutionally protected property interest. *See Bell v. Burson*, 402 U.S. 535, 539 (1971).

49. Metropolitan's TPR listing is the functional equivalent of a professional license. Without it, Metropolitan cannot lawfully provide ELDT training or certify driver-trainees. The listing is essential to Metropolitan's livelihood and to the continued operation of its business.

50. Defendants have deprived Metropolitan of its constitutionally protected property interest without constitutionally adequate process. The three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), requires consideration of: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used, and the probable value of additional safeguards; and (3) the government's interest, including the fiscal and administrative burden of additional process.

51. The private interest is overwhelming. The emergency removal has not partially restricted Metropolitan's operations—it has completely shut them down. Metropolitan has lost all students and all ability to operate. Employees face layoffs. The business faces permanent closure. This is total destruction of Metropolitan's business.

52. Notably, 49 C.F.R. § 380.723(d) gives a provider thirty days to request review. It then provides that the FMCSA "may ask" for a conference. It sets no deadline for a hearing, no deadline for a decision, and no stay or interim relief of any kind. A provider such as Metropolitan, removed on August 31 has no assured date on which it will be heard and no assured date on which it will be answered, while the removal operates in full force and the business closes.

53. Where an agency summarily suspends or withdraws a license without a prior

hearing, the Due Process Clause requires at a minimum that the licensee be assured a prompt post-deprivation hearing and a prompt decision. *See Barry v. Barchi*, 443 U.S. 55 (1979).

54. Section 380.723 is defective in precisely that respect, and more severely. It does not require a hearing at all; it provides only that FMCSA "may ask" the provider to attend a conference. 49 C.F.R. § 380.723(d)(1). It fixes no date by which any conference or hearing must occur. It fixes no deadline by which FMCSA must decide. It provides no stay of the removal pending review and no interim relief of any kind. The removal operates in full force from the moment it issues and for as long as FMCSA takes to act.

55. The consequence in this case is that Metropolitan is suffering the entire penalty — the closure of its business — before any opportunity to contest FMCSA's proof.

56. The deprivation is total rather than partial. Unlike a suspension that restricts some portion of a licensee's activity, removal from the Registry eliminates the whole of Metropolitan's lawful business, because a provider not listed on the Registry may neither deliver entry-level driver training nor certify driver-trainees. The penalty is therefore complete from the first day, and the absence of an assured prompt decision is consequential to Metropolitan being deprived of any meaningful due process.

57. The risk of erroneous deprivation is extremely high. The FMCSA's own on-site audit, conducted on July 15, 2026—just six weeks before the emergency removal—found Metropolitan compliant in every respect except hazardous materials. Importantly, 76 of the 78 records in the FMCSA's dataset (97.4%) were within the FMCSA's own systems on the date of the audit. The FMCSA possessed virtually all of the evidence it now relies upon when it found Metropolitan compliant, and it took no action regarding English proficiency at that time.

58. Furthermore, the evidentiary dataset is facially unreliable. It includes at least one

chronologically impossible record—a driver inspected before he was trained. It applies the English language proficiency out-of-service standard retroactively to 71 drivers (91%) who were certified before that standard took effect on June 25, 2025. It states no rate, threshold, or benchmark. The median gap between training and inspection is 497 days. The FMCSA's own Notice of Emergency Removal concedes at paragraph 6(k) that the FMCSA's regulations do not require ELDT instruction to be provided in English.

59. The operative ground for removal—English language proficiency—was never communicated to Metropolitan before the emergency removal. The July 13, 2026 Notice of Investigation did not mention it. The July 15, 2026 audit did not address it. The August 28, 2026 Notice of Proposed Removal did not mention it anywhere in its twenty-two pages. Metropolitan received its first notice of the English-proficiency ground simultaneously with the removal itself.

60. The government's interest does not justify dispensing with due process. The FMCSA claims that public health, interest, or safety required immediate action. But the FMCSA's own conduct contradicts any claim of emergency. Three days before the emergency removal, on August 28, 2026, the FMCSA granted Metropolitan thirty days to respond and sixty days to cure a different deficiency. No new evidence emerged in the six-week interval between the audit and the removal. No new inspection occurred. Less drastic alternatives were available, including notice and an opportunity to respond, interim monitoring, and the proposed removal process that the FMCSA had already initiated.

61. The FMCSA's Notice of Investigation described the graduated process that the FMCSA intended to follow: investigation, audit, notice of deficiency, time to respond, and time to cure. Defendants initiated that process—and then abandoned it without explanation, substituting an emergency removal on a ground that had never been raised and on an obviously flawed and

erroneous record.

62. As a direct result of the Defendants' actions, Metropolitan has been substantially damaged and continues to suffer irreparable damage on a daily basis without any meaningful opportunity to be heard before its complete property interest and business enterprise are destroyed.

**COUNT II**

**ULTRA VIRES AGENCY ACTION**

63. Metropolitan incorporates by reference all of the allegation in paragraphs 1-45 and 47-51 above in support of its claim for ultra vires agency action against the Defendants as if fully set forth herein.

64. Title 49 C.F.R. § 380.723(e) permits emergency removal of a training provider from the TPR only in cases of "fraud, criminal behavior, or willful disregard of the regulations in this subpart or in which public health, interest, or safety requires."

65. No fraud has been alleged. The Notice of Emergency Removal does not allege that Metropolitan engaged in fraud.

66. No criminal behavior has been alleged. The Notice of Emergency Removal does not allege that Metropolitan engaged in criminal behavior.

67. Willful disregard has not been and cannot be established. "Willful disregard" requires intent. Upon information and belief, Metropolitan's examinations were co-scored by state monitors who independently evaluated and passed the candidates, including individuals on the FMCSA's 78-name spreadsheet. 71 of the 78 drivers (91%) were certified before June 25, 2025, the date on which English language proficiency first became an out-of-service condition. Metropolitan could not have willfully disregarded a standard that did not exist as an enforcement criterion when it certified these drivers. The FMCSA's own on-site audit found Metropolitan

compliant.

68. The FMCSA's own concession is dispositive of willfulness. Willful disregard of the regulations in this subpart requires the disregard of a regulation. At paragraph 6(k) of the Notice of Emergency Removal the FMCSA states that its regulations do not require that ELDT instruction be provided in English. Appendix A to Part 380 requires only that driver-trainees who are not English speakers be instructed in the FMCSA's English language proficiency requirements, App. A, Unit A1.5.6 (External Communications), and Appendix B imposes the same instructional obligation, App. B, Unit B1.5.6. Neither provision requires a training provider to verify a trainee's proficiency or to withhold certification for want of it. Metropolitan cannot have willfully disregarded a requirement that, by the FMCSA's own statement, does not exist.

69. No genuine emergency existed. The FMCSA's own conduct on August 28, 2026—granting Metropolitan thirty days to respond and sixty days to cure—is fundamentally inconsistent with a belief that immediate emergency action was required three days later. No new inspection, no new evidence, and no intervening event occurred in the six-week period between the July 15 audit and August 31 removal. The FMCSA itself concedes at paragraph 6(k) of the Notice of Emergency Removal that its regulations do not require ELDT instruction to be provided in English.

70. Federal agencies possess only the authority that Congress has conferred upon them, and courts have recognized the power to check agency action that exceeds those bounds. "Both [an agency's] power to act and how they are to act is authoritatively prescribed by Congress, so when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires." *Consumer Financial Protection Bureau v. Ocwen Financial Corp.*, 2019 WL 13203852, at *22 (S.D. Fla. Sept. 30, 2019) (quoting *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 296–97 (2013)).

71. Because the statutory predicates for emergency removal under 49 C.F.R. § 380.723(e) were not met, the Defendants acted beyond the scope of their delegated authority.

72. As a direct result of the Defendants' actions, Metropolitan has been substantially damaged and continues to suffer irreparable damage on a daily basis without any meaningful opportunity to be heard before its complete property interest and business enterprise are destroyed.

**COUNT III**

**REQUEST FOR EMERGENCY INJUNCTIVE RELIEF**

73. Metropolitan incorporates by reference all the allegations in paragraphs 1-45, 47-51, and 59-66 above in support of its claim for emergency injunctive relief against the Defendants as if fully set forth herein.

74. Metropolitan seeks a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) and a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a), restoring Metropolitan's listing on the TPR pending final resolution of this action.

75. A plaintiff seeking a temporary restraining order or preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent injunctive relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008); *see also eCapital Com. Fin. Corp. v. Hitachi Cap. Am. Corp.,* 519 F. Supp. 3d 1129, 1134 (S.D. Fla. 2021).

76. Metropolitan is likely to succeed on the merits of both Count I and Count II. The FMCSA's own audit found Metropolitan compliant six weeks before the emergency removal. The evidentiary dataset is facially flawed, containing at least one chronologically impossible record

and applying a standard retroactively to 91% of the drivers cited. Metropolitan received no pre-deprivation notice of the English-proficiency ground. The Notice of Investigation identified the wrong entity and was titled "Draft." The mass removal of 103 providers in a single afternoon at 3.6-minute intervals is inconsistent with the individualized determination required by due process. The FMCSA's concurrent issuance of a proposed removal with 30 days to respond and an emergency removal on an unrelated ground is internally contradictory.

77. Absent injunctive relief, Metropolitan will suffer irreparable harm. The emergency removal has completely shut down Metropolitan's operations. Metropolitan cannot train students, cannot certify driver-trainees, and cannot earn revenue. Students cannot complete their training and must seek alternative providers. Employees face layoff. The loss of students, employees, goodwill, and market position cannot be recovered. Every day of delay compounds irreversible harm. Metropolitan faces permanent closure.

78. Because Defendants are agencies and an officer of the United States, and because the United States' waiver of immunity under 5 U.S.C. § 702 extends only to relief other than money damages, no action for damages lies against Defendants for the losses described above. There is no statutory scheme under which Metropolitan may recover the revenue, the enterprise value, or the goodwill it loses each day the removal remains in effect. The injury is therefore irreparable not merely because it is severe, but because it is as a matter of law uncompensable.

79. The balance of equities tips decisively in Metropolitan's favor. Metropolitan faces total destruction of its business—an existential harm. Defendants face, at most, a temporary administrative inconvenience. The FMCSA can continue to monitor Metropolitan's compliance while this litigation proceeds. The balance of total business destruction against temporary administrative inconvenience is not close.

80. An injunction serves the public interest. The public interest favors lawful agency action, constitutional due process, and accurate regulatory enforcement. The public interest also favors maintaining available ELDT training capacity for commercial drivers. Removing a training provider on the basis of a facially flawed dataset, a retroactively applied standard, and an internally contradictory enforcement action does not serve public safety—it undermines confidence in the regulatory process.

81. As a direct result of the Defendants' actions, Metropolitan has been substantially damaged and continues to suffer irreparable damage on a daily basis without any meaningful opportunity to be heard before its complete property interest and business enterprise are destroyed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Metropolitan Trucking Inc. respectfully requests that this Court grant the following relief:

(a) Issue a temporary restraining order immediately restoring Metropolitan's listing on the Training Provider Registry pending a hearing on the motion for preliminary injunction or alternatively postponing the effective date of the removal under 5 U.S.C. § 705;

(b) An order directing removal from the public Registry record of any designation regarding Metropolitan which indicates emergency or involuntary removal;

(c) Issue a preliminary injunction maintaining Metropolitan's listing on the Training Provider Registry pending final resolution of this action;

(d) A declaration that certificates issued by Metropolitan on or after August 31, 2026 are valid and shall not be rejected on the ground of the removal, so that graduates are not separately penalized;

(e) Enter judgment in favor of Metropolitan and vacate the FMCSA's August 31,

2026 emergency removal of Metropolitan from the Training Provider Registry as unlawful, ultra vires, and in violation of the Due Process Clause of the Fifth Amendment;

(f) Award Metropolitan its costs and attorneys' fees under 28 U.S.C. § 2412 or as otherwise as permitted by law;

(g) Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Ralf R. Rodriguez*
Ralf R. Rodriguez, Esq.
Florida Bar No: 138053
FOX ROTHSCHILD LLP
2 S. Biscayne Boulevard, Suite 2750
Miami, FL 33131
Telephone: 786-501-7361
Email: ralfrodriguez@foxrothschild.com

*Counsel for Metropolitan Trucking Inc.*

Dated: September 4, 2026

Docusign Envelope ID: 8E5F0AB5-3FC2-85D0-80C5-A001FA8802BF


# VERIFICATION

I, Magdiel Fernandez, am the Director of Operations of Metropolitan Trucking Inc. I make this verification on behalf of Metropolitan and from my own knowledge except where otherwise stated.

I have read the foregoing Verified Complaint. The factual allegations are true and correct of my own personal knowledge unless I specifically state they are made on information and belief, and I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Date: September 09/04/26, 2026

Signed by:
Magdiel Fernandez
E7C6448AB29542A...

Magdiel Fernandez