**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION**

| | | |
|---|---|---|
| METROPOLITAN TRUCKING INC. and AMERICAN TRUCKING, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, UNITED STATES DEPARTMENT OF TRANSPORTATION, PATRICK D. NEMONS, Director, Office of Safety Programs, FMCSA, in his official capacity,<br><br>Defendants. | ) | Case No. 1:26-cv-26139 |

**FIRST AMENDED VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF**

Plaintiffs Metropolitan Trucking Inc. ("Metropolitan") and American Trucking, LLC ("American Trucking" together with Metropolitan collectively referred to as "Plaintiffs") bring this action against Defendants, the Federal Motor Carrier Safety Administration ("FMCSA"), the Department of Transportation ("DOT"), and Patrick D. Nemons, Director, Office of Safety Programs, FMCSA, in his official capacity ("Nemons", together with FMCSA and DOT collectively referred to as "Defendants"). In support thereof, Plaintiffs allege as follows:

## INTRODUCTION

1. Plaintiffs seek a temporary restraining order against Defendants and a preliminary injunction requiring Defendants to restore their listings on the Entry-Level Driver Training Provider Registry ("TPR"), from which the FMCSA removed them on August 31, 2026 without prior notice of the ground asserted and any assurance of a prompt post-deprivation hearing or a prompt decision.

2. On August 31, 2026, the FMCSA issued a Notice of Emergency Removal that shut down Metropolitan's operations effective immediately. The purported ground was that Metropolitan's graduates lacked English language proficiency. The August 31, 2026 Notice of Emergency Removal is attached hereto as **Exhibit A**.

3. Three days earlier, on August 28, 2026, the FMCSA issued a separate Notice of Proposed Removal identifying a single, unrelated curricular item—hazardous materials—granting Metropolitan thirty days to respond and sixty days to cure. Both notices were delivered on the same day. The August 28 notice does not mention English proficiency. The FMCSA's own audit, conducted six weeks before the emergency removal, found Metropolitan compliant in every respect except hazardous materials. The August 28, 2026 Notice of Proposed Removal is attached hereto as **Exhibit B**. The Notice of Proposed Removal was transmitted by Federal Express under tracking number 5245 7924 1725 and was delivered to Metropolitan on Monday, August 31, 2026 at 7:48 a.m. The Notice of Emergency Removal issued the same day.

4. On August 31, 2026, the FMCSA also issued Notices of Emergency Removal that shut down American Trucking's operations effective immediately. The purported ground was that American Trucking's graduates lacked English language proficiency. The August 31, 2026 Notices of Emergency Removal are attached hereto as **Composite Exhibit C**

5. Upon information and belief, Metropolitan's removal was the eleventh of 103 emergency removals that the FMCSA executed on the afternoon of August 31, 2026, in a span of six hours and eleven minutes, at an average interval of 3.6 minutes per removal. Before that day, only six emergency removals existed in the entire history of the TPR. Neither Metropolitan nor American Trucking received pre-deprivation notice of the English-proficiency ground, no opportunity to respond, and no hearing of any kind.

6. Upon information and belief, American Trucking was the twenty fifth of 103 removals that the FMCSA executed on the afternoon of August 31, 2026.

7. The emergency removal has destroyed Plaintiffs' businesses. Students cannot complete their training. Employees face layoffs. Absent immediate relief from this Court, Plaintiffs will be forced to close permanently—a harm that no after-the-fact administrative review can undo.

## PARTIES

8. Metropolitan is a Florida corporation with its principal place of business at 398 NE 79th Street, Miami, Florida 33138.

9. Metropolitan is an entry-level driver training provider authorized to deliver Class A, Class B, Passenger, and School Bus training curricula. Mr. Magdiel Fernandez serves as Director of Operations.

10. American Trucking is a Florida limited liability company with its principal place of business at 12707 N.W. 42 Avenue, Opa Locka, Florida 33054.

11. American Trucking is an entry-level driver training provider authorized to deliver Class A, Class B, Passenger, and School Bus training curricula. Mr. Magdiel Fernandez serves as Director of Operations.

12. The FMCSA is an agency of the United States within the DOT. The FMCSA is responsible for administering the TPR under 49 U.S.C. § 31305 and 49 C.F.R. Part 380, Subparts F and G.

13. The DOT is a cabinet-level department of the United States government and the parent agency of the FMCSA.

14. Nemons is the Director of the Office of Safety Programs within the FMCSA and is named in his official capacity. Nemons signed the August 31, 2026 Notices of Emergency Removal that are the subject of this action. *See* **Exhibits A** and **C**.

## JURISDICTION AND VENUE

### A. Subject-Matter Jurisdiction

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution of the United States. Plaintiffs assert claims under the Due Process Clause of the Fifth Amendment and seek to enjoin federal agency action that exceeds the scope of the agency's delegated statutory authority.

16. This action does not seek judicial review of a "final order" within the meaning of 28 U.S.C. § 2342(3)(A). The FMCSA emergency removal at issue is not a final agency order. The FMCSA's own regulation, 49 C.F.R. § 380.723(d)(2), expressly designates the FMCSA's decision on administrative review as "final Agency action." No decision on administrative review has been issued. Because no final agency action exists, 28 U.S.C. § 2342(3)(A) does not divest this Court of jurisdiction.

17. The FMCSA's own regulation establishes that the emergency removal is not the agency's final action. 49 C.F.R. § 380.723(d)(2) provides that the FMCSA's decision on a request for administrative review "constitutes final Agency action." The agency has thus designated a later decision, not the removal, as the point of finality. No such decision has been issued as to either Plaintiff.

18. A "final order" for purposes of 28 U.S.C. § 2342 is not coextensive with "final agency action" under the Administrative Procedure Act. The statute confers exclusive jurisdiction over "rules, regulations, or final orders," not over all final agency action, and some agency conduct accordingly remains subject to review in the district court in the first instance. *See Miccosukee Tribe of Indians of Fla. v. United States*, 680 F. Supp. 2d 1308, 1317 (S.D. Fla. 2010) (recognizing that the "final agency action requirement" is inapplicable to a constitutional claim under the Due Process Clause of the Fifth Amendment) (citing *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1240-41 (11th Cir.2003)).

19. Counts I and IV arise under the Fifth Amendment to the United States Constitution and this Court has jurisdiction over them under 28 U.S.C. § 1331. The emergency removals concerning the Plaintiffs were issued without a hearing, without an adjudicatory record, and without any adjudicatory proceeding of any kind. There is no record of the kind that review in a court of appeals presupposes, because the FMCSA created none.

**B. Venue**

20. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiffs reside in this judicial district and a substantial part of the events giving rise to the claims occurred here,

including Plaintiffs' operation of their training facility, the FMCSA audits, and the delivery of the removal notices.

### C. Sovereign Immunity

21. Sovereign immunity does not bar this action.

22. The provisions of 5 U.S.C. § 702 include a freestanding waiver of sovereign immunity for this action. It states that "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or an employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States."

23. This waiver is not limited to claims that challenge action under the Administrative Procedure Act. *See Miccosukee Tribe of Indians of Fla. v. United States*, 680 F. Supp. 2d 1308, 1316 (S.D. Fla. 2010) ("Section 702 is, however, a general waiver of sovereign immunity for suits against the United States seeking nonmonetary relief, even if the claim does not arise under the APA.").

24. Plaintiffs seek only injunctive relief, quintessentially non-monetary relief. Section 702 therefore waives sovereign immunity as to the relief requested herein.

## STATEMENT OF FACTS

### A. The July 13, 2026 Notice of Investigation to Metropolitan

25. On July 13, 2026, the FMCSA issued a Notice of Investigation signed by Alfredo Hernandez, CDL Specialist, Southern Service Center. The letter stated that the FMCSA had identified Metropolitan as a training provider in need of targeted review on July 1, 2026, and identified the scope of investigation as 49 C.F.R. Part 380, Subparts F and G.

26. The Notice of Investigation was facially defective. The letter recited that the FMCSA was "conducting an investigation to determine The CDL Schools LLC's compliance with the Federal Motor Carrier Safety Regulations" — an entity unrelated to Metropolitan and not a party to this action. The underlying file was titled "Draft." The letter contained unfilled template

placeholders. It demanded production of Metropolitan's entire documentary record within 48 hours of issuance. The Notice of Investigation did not mention English language proficiency or hazardous materials. A copy of the Notice of Investigation Letter is attached hereto as **Exhibit D**.

27. Metropolitan complied fully and promptly. Mr. Hernandez appeared in person at Metropolitan's facility on July 15, 2026, and was provided a binder and an electronic storage device containing all requested materials. Nothing was withheld.

**B. The July 15, 2026 On-Site Audit of Metropolitan**

28. On July 15, 2026, the FMCSA completed an on-site audit of Metropolitan. The FMCSA's investigation worksheet from that audit—which the FMCSA later transmitted to Metropolitan as a copy of the evidence upon which it relied—recorded the following findings:

(a) Metropolitan's Class A curriculum "passed through the Gem successfully with zero issues flagged" and "all elements met for Class A."

(b) Equivalent findings were recorded for Class B, Passenger, and School Bus curricula.

(c) The provider's assessments sufficiently cover each unit of instruction.

(d) All seven Training Certification items were marked "Yes."

(e) The self-certifications required by 49 C.F.R. § 380.707(a) were marked "Yes."

(f) One item did not pass: hazardous materials.

(g) The field designated "Safety Investigator" on the worksheet was left blank. A copy of the Worksheet is attached hereto as **Exhibit E**.

**C. The August 28, 2026 Notice of Proposed Removal of Metropolitan**

29. On August 28, 2026, the FMCSA issued a Notice of Proposed Removal to Metropolitan under 49 U.S.C. § 31305(c)(5) and 49 C.F.R. § 380.723(b), signed by Carlos Dequina, Acting Division Chief, Office of Safety Programs. *See* **Exhibit B**.

30. The sole stated ground for proposed removal was that Metropolitan's hazardous-materials curriculum omitted components E1.1 through E1.13 of Appendix E to Part 380. *See id.*

31. The Notice of Proposed Removal granted Metropolitan thirty days to respond and sixty days to complete corrective action. It expressly offered the alternative of removing hazardous-materials training from the types of training Metropolitan offers. *See id.*

32. English language proficiency does not appear anywhere in the twenty-two-page Notice of Proposed Removal. *See id.*

**D. The August 31, 2026 Notice of Emergency Removal of Metropolitan**

33. On August 31, 2026—three days after issuing the Notice of Proposed Removal—the FMCSA removed Metropolitan from the TPR effective immediately, by a Notice of Emergency Removal signed by Nemons under 49 U.S.C. § 31305(c)(5) and 49 C.F.R. § 380.723(e). *See* **Exhibit A**.

34. The operative ground for the emergency removal was English language proficiency of Metropolitan's graduates—a ground that had never been communicated to Metropolitan in any prior notice. The Notice of Emergency Removal cites internal enforcement policy MC-SEE-2026-0002. *See id.*

35. At paragraph 6(k) of the Notice of Emergency Removal, the FMCSA concedes that its regulations do not require that ELDT instructions be provided in English. *See id.*

36. Both the August 28 Notice of Proposed Removal and the August 31 Notice of Emergency Removal were delivered to Metropolitan on the same day, August 31, 2026.

**E. The 78-Driver Dataset as it Relates to Metropolitan**

37. The Notice of Emergency Removal enclosed a spreadsheet of 78 driver-trainee records as the FMCSA's evidentiary basis. *See id.* Analysis of the FMCSA's own data reveals the following:

(a) Every inspection in the dataset occurred on or after June 25, 2025—the date on which English language proficiency failure first became an out-of-service condition. *See* Commercial Vehicle Safety Alliance, *Non-Compliance with English Language Proficiency Regulation Takes Effect as an Out-of-Service Driver Violation* (June 25, 2025), available at https://cvsa.org/news/elp-oosc-06252025/;

(b) Yet 71 of the 78 drivers listed on the spreadsheet (91%) were certified by Metropolitan before June 25, 2025. *See id.* The FMCSA applied a standard retroactively to drivers who were certified when that standard did not exist as an enforcement criterion;

(c) The temporal gaps between training and inspection are enormous. The median gap is 497 days. The mean gap is 561.6 days. The longest gap is 1,514 days;

(d) At least one record in the dataset is chronologically impossible. The record of Raudel Acosta Hernandez shows a training date of July 31, 2026, and an inspection date of September 7, 2025—327 days before he was trained. *See id.* The presence of this record calls into question the reliability of the entire dataset.

38. Notably, 76 of the 78 roadside inspections (97.4%) on which the FMCSA relies had already occurred by July 15, 2026, the date of its on-site audit of Metropolitan, and 77 of the 78 training dates fall on or before that date. The FMCSA possessed virtually all of the evidence it now relies upon at the time it found Metropolitan compliant and took no action regarding English proficiency.

39. The FMCSA states a raw count and no rate. It does not disclose the total number of certificates Metropolitan has issued, over what period, or against what benchmark seventy-eight is to be measured. Without a denominator the figure establishes nothing about the quality of Metropolitan's instruction, and the FMCSA identifies no threshold that seventy-eight is said to exceed.

**F. The Mass Removal Action of August 31, 2026**

40. Upon information and belief, Metropolitan's removal was the eleventh of 103 emergency removals that the FMCSA executed on the afternoon of August 31, 2026, in a span of

six hours and eleven minutes, at an average interval of 3.6 minutes per removal. Before that day, only six emergency removals existed in the entire history of the TPR.

41. The pace and scale of the mass removal action are inconsistent with any individualized determination that each of the 103 providers, including Metropolitan and American Trucking, posed an imminent threat to public safety requiring emergency action.

42. On July 1, 2026, the FMCSA identified American Trucking as a training provider in need of targeted review.

43. On July 10, 2026, the FMCSA issued to American Trucking a Notice of Investigation to Determine Continued Listing on the Federal Motor Carrier Safety Administration's Training Provider Registry, signed by Alfredo Hernandez, CDL Specialist, Southern Service Center, Commercial Driver's License Division (the "July 10 Notice"). The July 10 Notice was served by electronic mail on ELDT@MyFloridaCDL.com, americancdl1@gmail.com, and martha@myfloridacdl.com, and on the Training Provider Registry at TPR@dot.gov. A true and correct copy of the July 10 Notice is attached as **Exhibit F**.

44. The July 10 Notice invoked 49 U.S.C. § 31305(c) and 49 C.F.R. § 380.703(a)(5) and (6). It stated that its purpose was "to officially notify you that FMCSA is conducting an investigation to determine American Trucking, LLC's compliance with the Federal Motor Carrier Safety Regulations at 49 CFR Part 380, Subparts F and G." It demanded eight categories of records within forty-eight hours, including all theory and behind-the-wheel lesson plans and curricula, instructor qualification records, individual driver-trainee assessment records, and driver-trainee self-certifications. It stated: "Partial production of documents will not satisfy the requirements of this notice." It warned that a failure to produce could cause the FMCSA to "initiate the involuntary removal process established in 49 CFR 380.723(b)."

45. The July 10 Notice was expressly limited in scope. It stated: "The focus of this investigation is on the training provider's location at 12707 NW 42nd Ave Opa-locka, FL." It identified a single Location ID No., bcc2c21e-e8b8-4629-a6d5-ae81f733b110. It did not concern American Trucking's Orlando location or the online-only location.

46. On July 14, 2026, the FMCSA conducted that investigation. American Trucking produced records and afforded the FMCSA access to its operations. To date, the FMCSA has never contended otherwise.

47. On August 12, 2026, the FMCSA closed the investigation relating to American Trucking. It issued to American Trucking a Notice of No Further Action signed by Edwin "Russell" Thompson, CDL Program Manager, FMCSA Southern Service Center, with a certificate of service executed by Becky Rehberg, ELDT Program Manager (the "Notice of No Further Action"). The Notice of No Further Action states in full and without qualification: "On July 14, 2026, the Federal Motor Carrier Safety Administration (FMCSA) initiated an investigation to evaluate AMERICAN TRUCKING, LLC's compliance with 49 CFR Part 380, Subparts F and/or G. Based on our findings, FMCSA has determined that AMERICAN TRUCKING, LLC has taken the necessary steps to remain listed on the Training Provider Registry. As such, no further action is required at this time." A true and correct copy of the Notice of No Further Action is attached as **Exhibit G**.

48. Nineteen days later, on August 31, 2026, the FMCSA removed American Trucking and all three of its registered locations from the TPR on an emergency basis. Neither Notice of Emergency Removal mentions the July 10 Notice of Investigation, the July 14 investigation, or the August 12 Notice of No Further Action. Neither acknowledges that the FMCSA had reached a contrary determination, and neither offers any reason for departing from it.

49. Every fact on which the August 31 Notices of Emergency Removal sent to American Trucking rely, predates August 12, 2026. Every training date and every roadside inspection date in the thirty-five-record spreadsheet enclosed with the Notices of Emergency Removal predates that date, as do four of the five crashes recited at paragraph 6(j). With the single exception of one crash recited at paragraph 6(j), the FMCSA identifies no fact arising after August 12, 2026, and it does not explain why facts it had already reviewed and closed became an emergency nineteen days later.

**G. Notices of Emergency Removal of American Trucking**

50. American Trucking, LLC received two Notices of Emergency Removal, each dated August 31, 2026, bearing UPS tracking numbers 1ZA4762T0192603852 and 1ZA4762T0197586425 respectively. The two documents are identical in every substantive respect. *See* **Composite Exhibit C**.

51. The two Notices of Emergency Removal are identical in text and differ only in their UPS tracking numbers, 1ZA4762T0192603852 and 1ZA4762T0197586425. The certificate of service on the first bears the name of the individual who executed it. The certificate of service on the second is executed over unfilled template placeholders reading "[NAME]" and "[TITLE]." The FMCSA thus served American Trucking twice with the same document, one copy of which was transmitted with its certificate of service left in template form.

52. American Trucking received no notice of proposed removal under 49 C.F.R. § 380.723(b). It was told of no deficiency at any time. It received no statement of the ground on which its removal was contemplated and no opportunity to respond or to correct. To the contrary, the last communication American Trucking received from the FMCSA before its removal was the August 12, 2026 Notice of No Further Action determining that it had taken the necessary steps to remain listed on the Registry.

**H. The July 14, 2026 Onsite Review of American Trucking and the Subsequent Removal of American Trucking with No Prior Notice**

53. On July 14, 2026, an FMCSA CDL Specialist conducted an on-site review of American Trucking and identified no deficiency. On August 12, 2026 the FMCSA closed that investigation in writing. Nineteen days later, and without any further communication of any kind, the FMCSA removed American Trucking from the Registry and effectively shut down all three of its locations for all purposes.

54. The FMCSA's decision to remove American Trucking from the TPR is allegedly based on a spreadsheet of thirty-five driver-trainee records and ten roadside inspection reports.

**I. Discrepancies in the Evidence Supporting the Notices of Removal as to American Trucking**

55. The FMCSA's spreadsheet of thirty-five driver-trainee records and ten roadside inspection reports is defective in ways that undermine the foundation of the FMCSA's removal action against American Trucking.

56. The first defect that is apparent from the spreadsheet of thirty-five driver trainee records and ten roadside inspection reports is that the record relied upon by the FMCSA attributes training by American Trucking to a location that the agency's own Registry says did not yet exist. It contains a record in which a driver was cited six months before he was trained.

57. Furthermore, the record relied upon by the FMCSA says nothing whatever about one of the three locations for American Trucking which the FMCSA closed. It alleges thirty-five citations without stating the number of certificates from which those thirty-five are drawn.

58. On July 14, 2026, Alfredo Hernandez, CDL Specialist, Southern Service Center, attended American Trucking's Opa-locka location in person and reviewed its records and curricula. He identified no deficiency to American Trucking then or at any time thereafter. No investigation worksheet, no findings memorandum, and no statement of deficiency has ever been furnished to American Trucking. The only written product of that investigation ever furnished to American Trucking is the August 12, 2026 Notice of No Further Action, which found no deficiency.

59. Between August 12 and August 31, 2026, American Trucking received no communication whatever from the FMCSA. It received no notice of proposed removal under 49 C.F.R. § 380.723(b), no notice that its Registry listing was again in question, no request for records or curricula of the kind contemplated by 49 C.F.R. § 380.723(c)(2)(i), and no statement of any deficiency. It was never told, at any time before August 31, 2026, that its English language proficiency instruction was thought deficient. The first notice American Trucking received that its listing was in question was the notice that it had already been terminated.

60. On or about September 2, 2026, American Trucking received two envelopes, each containing a thirty-four page Notice of Emergency Removal dated August 31, 2026. A page-by-page comparison shows no substantive difference between them. They recite the same grounds,

the same provider identifier, the same allegation of thirty-five driver-trainees, the same spreadsheet of thirty-five records, and the same ten inspection reports. They differ only in the UPS tracking number appearing on the certificate of service. The certificate of service on each Notice states that service was effected on August 31, 2026 by United Parcel Service and by electronic mail to martha@myfloridacdl.com. The physical envelopes were not delivered to American Trucking until on or about September 2, 2026.

61. The FMCSA removed an American Trucking location on a record that says nothing about that location.

62. Specifically, American Trucking Registry location e6c2324b-db7b-4e9a-8a04-5ed259b741d8 provides theory instruction online only. It has no range and no public-road training facility and is not configured to deliver behind-the-wheel training. Not one of the thirty-five records in the FMCSA's spreadsheet is attributed to it. The FMCSA's evidence is wholly silent as to this American Trucking location.

63. Paragraph 7 of the Notices nonetheless rests the finding of willful disregard in part on the delivery of behind-the-wheel training to driver-trainees who certified their compliance with the qualification standards. American Trucking Registry location e6c2324b-db7b-4e9a-8a04-5ed259b741d8 does not deliver behind-the-wheel training. A determination that a particular location presents an immediate risk to public health or safety cannot rest on a record that contains no evidence about it.

64. The American Trucking Opa Locka location was created December 8, 2025. All thirty-one records bearing the Opa-locka location identifier carry training dates between September 22, 2022 and September 3, 2025, and that location was not created in the FMCSA's own Registry until December 8, 2025. Not one falls after the American Trucking Opa Locka location existed; the earliest predates its creation by three years and two months.

65. The inference available on the face of the FMCSA's own data is that the column headed TPRID records the location with which a certificate is presently associated in the Registry, not the location that delivered the training, and that the evidence was assembled by joining current Registry associations onto historical certificate records. If that is so, the spreadsheet cannot

establish where any of the training was delivered. It cannot support a determination directed at any American Trucking location, and it cannot support the closure of a location that did not exist when the conduct is alleged to have occurred.

**J. Obvious Error in the Record Provided to American Trucking**

66. The FMCSA's cited evidence in the Notices also contains a record that is chronologically impossible. Specifically, Record 13 of the spreadsheet identifies driver-trainee Jefferson Silva, attributed to the American Trucking Orlando location, with a training date of June 2, 2026, and an inspection date of December 2, 2025, report number 0378001927. On the face of the FMCSA's own record, that driver was cited approximately 182 days before he was trained. The defect is not confined to one row. Paragraph 6(h) alleges that the driver-trainees "were cited for one or more ELP violation(s) after American Trucking, LLC certified that they had successfully completed ELDT," and the Notices state that the agency reviewed reports issued for driver-trainees who were "thereafter cited." The temporal sequence is the premise of the allegation. At least one record in the FMCSA's own evidence contradicts it, which raises a question as to the reliability of the method by which the dataset was assembled.

67. The regulation the FMCSA invokes in the Notices provided to American Trucking imposes a duty to instruct, not a duty to verify — and the Notices concede as much. The Notices cite Appendix A to 49 C.F.R. part 380, Unit A1.5.6, and Appendix B, Unit B1.5.6.

68. Unit A1.5.6, External Communications, sits within Section A1.5, Non-Driving Activities. It provides that "[d]river-trainees who are not English speakers must be instructed in FMCSA English language proficiency requirements." Unit B1.5.6 is its counterpart in the Class B curriculum and refers to those "who are not native English speakers." Two features of that text are decisive. The duty is a duty to instruct. And it is conditional: it attaches to driver-trainees who are not English speakers. Neither provision requires a training provider to test or verify a driver-trainee's English language proficiency, to withhold certification for want of it, or to guarantee that driver's performance at a roadside inspection months or years later. The written assessment required by 49 C.F.R. § 380.715(a) tests the driver-trainee's knowledge of the curriculum's objectives. It is not a language examination, and no provision of Part 380 makes it one.

### K. No Evidence of Willful Disregard by American Trucking

69. When analyzing American Trucking's legal duty against the above stated standard, the FMCSA's evidence is silent on every element. The Notices do not state which of the thirty-five driver-trainees were not English speakers. It does not identify any instruction American Trucking failed to deliver. It does not identify the module, unit or lesson in American Trucking's curriculum said to be deficient. It does not state whether the curriculum was examined at all. A roadside citation under § 391.11(b)(2), issued to a licensed driver months or years after training, does not establish that the instruction required by Unit A1.5.6 was not delivered.

70. The FMCSA applied a 2026 enforcement policy to training delivered by American Trucking as early as 2022. Every roadside inspection in the FMCSA's dataset occurred on or after June 25, 2025. Thirty-three of the thirty-five driver-trainees attributed to American Trucking completed training before that date. The median interval between training and citation is 551 days and the longest is 1,188 days.

71. Paragraph 6(j) of the Notices identifies the governing enforcement policy as MC-SEE-2026-0002. A training provider cannot deliver instruction in 2022 calibrated to an enforcement posture articulated in 2026. The FMCSA's dataset measures that interval on its face and does not account for it, and the Notices do not state that the FMCSA considered it.

72. Importantly, the FMCSA alleges thirty-five citations issued to trainees certified by American Trucking without stating the number from which they are drawn. The Notices allege that thirty-five driver-trainees were cited. They do not state how many ELDT certificates American Trucking issued during the period covered by the spreadsheet, and the FMCSA has not supplied that figure.

73. Thirty-five citations out of a few dozen certificates and thirty-five out of several thousand describe entirely different providers. Without the denominator there is no rate, no benchmark against comparable providers, and no basis on which to conclude that American Trucking's outcomes are anomalous rather than typical.

74. The finding of willful disregard by American Trucking cannot stand against the FMCSA's own record. Willfulness requires knowledge of the obligation and disregard of it. The

last thing the FMCSA told American Trucking before removing it was that it had taken the necessary steps to remain listed on the Registry. *See* Notice of No Further Action, attached hereto as **Exhibit G**. A provider cannot willfully disregard a requirement that the agency has certified in writing, nineteen days earlier, that the provider is meeting. Willfulness requires knowledge, or a state of affairs from which knowledge may be inferred. The Notices of Emergency Removal identify none. American Trucking was never told that its English language proficiency instruction was thought deficient. It was reviewed on site on July 14, 2026 and no deficiency was identified. It cannot have willfully disregarded a requirement no one had ever suggested it was failing to meet, and the FMCSA's own conduct — an on-site review producing no adverse finding — is inconsistent with the finding of willful disregard.

75. The FMCSA investigated one location and removed three. The July 10, 2026 Notice of Investigation was expressly confined to the Opa-locka location at 12707 NW 42nd Avenue and to a single Location ID. The August 12, 2026 Notice of No Further Action is addressed to "AMERICAN TRUCKING, LLC -Opa-Locka." The August 31, 2026 removal reached the Orlando location and the online-only location as well, notwithstanding that the FMCSA's own spreadsheet contains no record attributable to the online-only location and four records attributable to the Orlando location.

76. The FMCSA served its July 10 and August 12 communications on American Trucking at 12707 NW 42nd Avenue, Opa-locka, Florida, and by electronic mail to ELDT@MyFloridaCDL.com, americancdl1@gmail.com, and martha@myfloridacdl.com. It served the August 31, 2026 Notices of Emergency Removal, which commenced a thirty-day period within which American Trucking was required to act, at a different address and on a single electronic mail address.

77. The FMCSA relies on crashes it expressly does not connect to American Trucking. Paragraph 6(j) of the Notices recites five crashes: I-80 in Lincoln County, Nebraska on August 15, 2026; I-71 in Madison County, Ohio on July 5, 2026; I-95 in Stafford County, Virginia on May 29, 2026, with five fatalities; I-40 in Baxter, Putnam County, Tennessee on December 9, 2025; and Florida's Turnpike in St. Lucie County on August 12, 2025, with three killed.

78. Significantly, the Notices state expressly that the FMCSA does not allege that the drivers involved in those crashes were trained by American Trucking. The FMCSA has identified no crash, no injury and no incident involving any driver trained by American Trucking. A record of this type cannot supply the individualized basis for an emergency finding that the record otherwise lacks.

**L. Harm to Plaintiffs**

79. The emergency removal has shut down Metropolitan's operations entirely. Students cannot complete their training. Employees face imminent layoffs. Metropolitan faces permanent closure. The harm is ongoing and compounds with each passing day. As of August 31, 2026, a total of 475 driver trainees were enrolled and mid-program. Metropolitan has been unable to certify any of them. Metropolitan employs a total of 43 instructors and staff, and its monthly fixed obligations are approximately $103,000.00.

80. American Trucking has suffered the same character of harm at its own locations. American Trucking is a separate Florida limited liability company with its own facilities, its own driver-trainees, and its own employees, under common ownership with Metropolitan. Its removal from the Registry has destroyed its ability to conduct entry-level driver training, to certify driver-trainees, and to generate revenue, and it faces the same imminent and irreparable harm — permanent closure of its training operations — absent relief from this Court.

81. All three of American Trucking's registered training locations were removed from the Registry on August 31, 2026: the Opa-locka location at 12707 NW 42nd Avenue, the Orlando location at 7138 Narcoossee Road, and the online-only location. As of that date 466 driver-trainees were enrolled and mid-program across those locations. American Trucking has been unable to certify any of them. It employs a total of 19 instructors and staff, and its monthly fixed obligations are approximately $89,000.00.

**COUNT I**
**VIOLATION OF THE FIFTH AMENDMENT—PROCEDURAL DUE PROCESS**
**(Metropolitan Trucking Inc.)**

82. Metropolitan incorporates by reference all of the allegations in paragraphs 1 – 3, 5, 7-9, 12-41, 68 and 79 above in support of its claim for violation of the Fifth Amendment to the United States Constitution against the Defendants as if fully set forth herein.

83. Metropolitan possesses a constitutionally protected property interest in its listing on the TPR.

84. The Supreme Court has held that a license whose continued possession is essential to the pursuit of a livelihood is a constitutionally protected property interest. *See Bell v. Burson*, 402 U.S. 535, 539 (1971).

85. Metropolitan's TPR listing is the functional equivalent of a professional license. Without it, Metropolitan cannot lawfully provide ELDT training or certify driver-trainees. The listing is essential to Metropolitan's livelihood and to the continued operation of its business.

86. Defendants have deprived Metropolitan of its constitutionally protected property interest without constitutionally adequate process. The three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), requires consideration of: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used, and the probable value of additional safeguards; and (3) the government's interest, including the fiscal and administrative burden of additional process.

87. The private interest is overwhelming. The emergency removal has not partially restricted Metropolitan's operations—it has completely shut them down. Metropolitan has lost all students and all ability to operate. Employees face layoffs. The business faces permanent closure. This is total destruction of Metropolitan's business.

88. Notably, 49 C.F.R. § 380.723(d) gives a provider thirty days to request review. It then provides that the FMCSA "may ask" for a conference. It sets no deadline for a hearing, no deadline for a decision, and no stay or interim relief of any kind. A provider such as Metropolitan,

removed on August 31 has no assured date on which it will be heard and no assured date on which it will be answered, while the removal operates in full force and the business closes.

89. Where an agency summarily suspends or withdraws a license without a prior hearing, the Due Process Clause requires at a minimum that the licensee be assured a prompt post-deprivation hearing and a prompt decision. *See Barry v. Barchi*, 443 U.S. 55 (1979).

90. Section 380.723 is defective in precisely that respect, and more severely. It does not require a hearing at all; it provides only that FMCSA "may ask" the provider to attend a conference. 49 C.F.R. § 380.723(d)(1). It fixes no date by which any conference or hearing must occur. It fixes no deadline by which FMCSA must decide. It provides no stay of the removal pending review and no interim relief of any kind. The removal operates in full force from the moment it issues and for as long as FMCSA takes to act.

91. The consequence in this case is that Metropolitan is suffering the entire penalty—the closure of its business—before any opportunity to contest FMCSA's proof.

92. The deprivation is total rather than partial. Unlike a suspension that restricts some portion of a licensee's activity, removal from the Registry eliminates the whole of Metropolitan's lawful business, because a provider not listed on the Registry may neither deliver entry-level driver training nor certify driver-trainees. The penalty is therefore complete from the first day, and the absence of an assured prompt decision is consequential to Metropolitan being deprived of any meaningful due process.

93. The risk of erroneous deprivation is extremely high. The FMCSA's own on-site audit, conducted on July 15, 2026—just six weeks before the emergency removal—found Metropolitan compliant in every respect except hazardous materials. Importantly, 76 of the 78 roadside inspections on which the FMCSA relies had already occurred by the date of the audit, and 77 of the 78 training dates fall on or before that date. The FMCSA possessed virtually all the evidence it now relies upon when it found Metropolitan compliant, and it took no action regarding English proficiency at that time.

94. Furthermore, the evidentiary dataset is facially unreliable. It includes at least one chronologically impossible record—a driver inspected before he was trained. It applies the English

language proficiency out-of-service standard retroactively to 71 drivers (91%) who were certified before that standard took effect on June 25, 2025. It states no rate, threshold, or benchmark. The median gap between training and inspection is 497 days. The FMCSA's own Notice of Emergency Removal concedes at paragraph 6(k) that the FMCSA's regulations do not require ELDT instruction to be provided in English.

95. The operative ground for removal—English language proficiency—was never communicated to Metropolitan before the emergency removal. The July 13, 2026 Notice of Investigation did not mention it. The July 15, 2026 audit did not address it. The August 28, 2026 Notice of Proposed Removal did not mention it anywhere in its twenty-two pages. Metropolitan received its first notice of the English-proficiency ground simultaneously with the removal itself.

96. The government's interest does not justify dispensing with due process. The FMCSA claims that public health, interest, or safety required immediate action. But the FMCSA's own conduct contradicts any claim of emergency. Three days before the emergency removal, on August 28, 2026, the FMCSA granted Metropolitan thirty days to respond and sixty days to cure a different deficiency. No new evidence concerning Metropolitan's English language proficiency instruction emerged in the interval between the July 15, 2026 audit and the August 31, 2026 removal. The FMCSA conducted no further audit, review or site visit of Metropolitan, and identified no deficiency in its instruction that it had not already had before it on July 15, 2026.

97. The FMCSA's Notice of Investigation described the graduated process that the FMCSA intended to follow stating that "the FMCSA will contact you once the Agency reviews the documents, issues a decision, or if additional information is required." Defendants initiated that process—and then abandoned it without explanation, substituting an emergency removal on a ground that had never been raised and on an obviously flawed and erroneous record.

98. As a direct result of the Defendants' actions, Metropolitan has been substantially damaged and continues to suffer irreparable damage on a daily basis without any meaningful opportunity to be heard before its complete property interest and business enterprise are destroyed.

**COUNT II**
**ULTRA VIRES AGENCY ACTION**
**(Metropolitan Trucking Inc.)**

99. Metropolitan incorporates by reference all of the allegations in paragraphs 1 – 3, 5, 7-9, 12-41, 68, 79, and 83 – 97 above in support of its claim for ultra vires agency action against the Defendants as if fully set forth herein.

100. Both Notices of Emergency Removal identify 49 U.S.C. § 31305(c)(5) as the statutory authority for the action taken. That provision directs that the Secretary "shall issue final regulations establishing minimum entry-level training requirements," including regulations "requiring a training provider … that offers training that results in the issuance of a certification … to demonstrate that the training meets the requirements of the regulations, through a process established by the Secretary."

101. Section 31305(c)(5) is a rulemaking directive. It commands the Secretary to establish a process. It confers no authority to remove a training provider from the Registry in an individual adjudication, and it confers no emergency authority of any kind. The only process the Secretary established pursuant to that command is the removal process codified at 49 C.F.R. § 380.723, and that process requires a notification of proposed removal, a thirty-day opportunity to respond, and an opportunity to take corrective action before a provider is removed.

102. Independently, an agency is bound by its own regulations for so long as they remain in force, and may not depart from them in an individual case. *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The FMCSA promulgated the removal process at 49 C.F.R. § 380.723, initiated that process against Metropolitan by Notice of Investigation on July 13, 2026 and by Notice of Proposed Removal on August 28, 2026, and then abandoned it three days later on a ground the FMCSA had never previously identified.

103. In removing Metropolitan on a ground it had never raised, three days after commencing the very process the Secretary established and while that process remained open, the FMCSA acted outside the only authority Congress conferred and outside the only process the Secretary established under it. The agency did not misapply its regulation; it exercised an adjudicatory removal power that the statute it invoked does not confer.

104. Furthermore, Title 49 C.F.R. § 380.723(e) permits emergency removal of a training provider from the TPR only in cases of "fraud, criminal behavior, or willful disregard of the regulations in this subpart or in which public health, interest, or safety requires."

105. No fraud has been alleged. The Notice of Emergency Removal does not allege that Metropolitan engaged in fraud.

106. No criminal behavior has been alleged. The Notice of Emergency Removal does not allege that Metropolitan engaged in criminal behavior.

107. Willful disregard has not been and cannot be established. "Willful disregard" requires intent. Significantly, 71 of the 78 drivers (91%) were certified before June 25, 2025, the date on which English language proficiency first became an out-of-service condition. Metropolitan could not have willfully disregarded a standard that did not exist as an enforcement criterion when it certified these drivers. The FMCSA's own on-site audit found Metropolitan compliant.

108. The FMCSA's own Notice defines the obligation and defeats the finding of willfulness. At paragraph 6(k) the FMCSA states: "While FMCSA's regulations do not require that ELDT instruction be provided in English, the regulations do require training providers to provide theory instruction about ELP and require BTW driver-trainees to certify they will comply with the qualification standards, including ELP." Metropolitan satisfied both obligations the FMCSA identifies. The theory curriculum delivers the instruction required by Appendix A, Unit A1.5.6 and Appendix B, Unit B1.5.6, and Metropolitan holds the certifications required by 49 C.F.R. § 380.707(a) for every driver-trainee at issue. The obligation the FMCSA's Notice describes is an obligation to instruct and to obtain a certification. It is not an obligation to verify proficiency, and it is the latter for which Metropolitan has been removed.

109. No genuine emergency existed. The FMCSA's own conduct on August 28, 2026—granting Metropolitan thirty days to respond and sixty days to cure—is fundamentally inconsistent with a belief that immediate emergency action was required three days later. In the interval between the July 15, 2026 audit and the August 31, 2026 removal, the FMCSA conducted no further audit or review of Metropolitan and identified no new deficiency in its instruction.

110. Federal agencies possess only the authority Congress has conferred upon them, and a federal district court has jurisdiction over an original suit to set aside agency action taken in excess of the agency's delegated powers. *Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958). "Both [an agency's] power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires." *City of Arlington v. FCC*, 569 U.S. 290, 296-97 (2013).

111. Because the statutory predicates for emergency removal under 49 C.F.R. § 380.723(e) were not met, the Defendants acted beyond the scope of their delegated authority.

112. As a direct result of the Defendants' actions, Metropolitan has been substantially damaged and continues to suffer irreparable damage on a daily basis without any meaningful opportunity to be heard before its complete property interest and business enterprise are destroyed.

**COUNT III**
**REQUEST FOR EMERGENCY INJUNCTIVE RELIEF**
**(Metropolitan Trucking Inc.)**

113. Metropolitan incorporates by reference all the allegations in paragraphs 1 – 3, 5, 7-9, 12-41, 68, 79, 83 – 97, and 100 – 111 above in support of its claim for emergency injunctive relief against the Defendants as if fully set forth herein.

114. Metropolitan seeks a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) and a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a), restoring Metropolitan's listing on the TPR pending final resolution of this action.

115. A plaintiff seeking a temporary restraining order or preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent injunctive relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008); *see also Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*).

116. Metropolitan is likely to succeed on the merits of both Count I and Count II. The FMCSA's own audit found Metropolitan compliant six weeks before the emergency removal. The evidentiary dataset is facially flawed, containing at least one chronologically impossible record

and applying a standard retroactively to 91% of the drivers cited. Metropolitan received no pre-deprivation notice of the English-proficiency ground. The Notice of Investigation recited that the FMCSA was investigating the compliance of an unrelated entity, and the underlying file was titled "Draft. The mass removal of 103 providers in a single afternoon at 3.6-minute intervals is inconsistent with the individualized determination required by due process.

117. Moreover, the FMCSA's concurrent issuance of a proposed removal with 30 days to respond and an emergency removal on an unrelated ground is internally contradictory.

118. Absent injunctive relief, Metropolitan will suffer irreparable harm. The emergency removal has completely shut down Metropolitan's operations. Metropolitan cannot train students, cannot certify driver-trainees, and cannot earn revenue. Students cannot complete their training and must seek alternative providers. Employees face layoffs. The loss of students, employees, goodwill, and market position cannot be recovered. Every day of delay compounds irreversible harm. Metropolitan faces permanent closure.

119. Because Defendants are agencies and an officer of the United States, and because the United States' waiver of immunity under 5 U.S.C. § 702 extends only to relief other than money damages, no action for damages lies against Defendants for the losses described above. There is no statutory scheme under which Metropolitan may recover the revenue, the enterprise value, or the goodwill it loses each day the removal remains in effect. The injury is therefore irreparable not merely because it is severe, but because it is as a matter of law uncompensable.

120. The balance of equities tips decisively in Metropolitan's favor. Metropolitan faces total destruction of its business—an existential harm. Defendants face, at most, a temporary administrative inconvenience. The FMCSA can continue to monitor Metropolitan's compliance while this litigation proceeds. The balance of total business destruction against temporary administrative inconvenience is not close.

121. An injunction serves the public interest. The public interest favors lawful agency action, constitutional due process, and accurate regulatory enforcement. The public interest also favors maintaining available ELDT training capacity for commercial drivers. Removing a training provider on the basis of a facially flawed dataset, a retroactively applied standard, and an internally

contradictory enforcement action does not serve public safety—it undermines confidence in the regulatory process.

122. As a direct result of the Defendants' actions, Metropolitan has been substantially damaged and continues to suffer irreparable damage on a daily basis without any meaningful opportunity to be heard before its complete property interest and business enterprise are destroyed.

**COUNT IV**
**VIOLATION OF THE FIFTH AMENDMENT—PROCEDURAL DUE PROCESS**
**(American Trucking, LLC)**

123. American Trucking incorporates by reference all of the allegations in paragraphs 1, 4 – 7, 10 – 24, 40 – 78, and 80 – 81 above in support of its claim for violation of the Fifth Amendment to the United States Constitution against the Defendants as if fully set forth herein.

124. American Trucking possesses a constitutionally protected property interest in its listing on the TPR.

125. The Supreme Court has held that a license whose continued possession is essential to the pursuit of a livelihood is a constitutionally protected property interest. *See Bell v. Burson*, 402 U.S. 535, 539 (1971).

126. American Trucking's TPR listing is the functional equivalent of a professional license. Without it, American Trucking cannot lawfully provide ELDT training or certify driver-trainees. The listing is essential to American Trucking's livelihood and to the continued operation of its business.

127. Defendants have deprived American Trucking of its constitutionally protected property interest without constitutionally adequate process. The three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), requires consideration of: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used, and the probable value of additional safeguards; and (3) the government's interest, including the fiscal and administrative burden of additional process.

128. The private interest is overwhelming. The emergency removal has not partially restricted American Trucking's operations—it has completely shut them down. American Trucking has lost all students and all ability to operate. Employees face layoffs. The business faces permanent closure. This is total destruction of American Trucking's business.

129. The regulatory framework provides no assured prompt post-deprivation hearing or decision. 49 C.F.R. § 380.723(d) gives a provider thirty days to request review but sets no deadline for a hearing, no deadline for a decision, and no stay or interim relief of any kind. American Trucking has no assured date on which it will be heard and no assured date on which it will be answered, while the removal operates in full force and the business closes.

130. Where an agency summarily suspends or withdraws a license without a prior hearing, the Due Process Clause requires at a minimum that the licensee be assured a prompt post-deprivation hearing and a prompt decision. *See Barry v. Barchi*, 443 U.S. 55 (1979).

131. Section 380.723 is defective in precisely that respect. It does not require a hearing at all; it provides only that FMCSA "may ask" the provider to attend a conference. 49 C.F.R. § 380.723(d)(1). It fixes no date by which any conference or hearing must occur. It fixes no deadline by which FMCSA must decide. It provides no stay of the removal pending review and no interim relief of any kind.

132. The consequence is that American Trucking is suffering the entire penalty—the closure of its business—before any opportunity to contest FMCSA's proof.

133. The deprivation is total rather than partial. Removal from the Registry eliminates the whole of American Trucking's lawful business, because a provider not listed on the Registry may neither deliver entry-level driver training nor certify driver-trainees. The penalty is therefore complete from the first day, and the absence of an assured prompt decision is consequential to American Trucking being deprived of any meaningful due process.

134. The risk of erroneous deprivation is extreme, and in this instance the erroneous deprivation is demonstrated rather than predicted. The FMCSA investigated American Trucking's Opa-locka location under a Notice of Investigation issued July 10, 2026, conducted that investigation on July 14, 2026, and on August 12, 2026 determined in writing that American

Trucking "has taken the necessary steps to remain listed on the Training Provider Registry" and that "no further action is required at this time." Nineteen days later the FMCSA removed American Trucking from the Registry without notice, without any statement of the ground on which it acted, without any reference to its own determination, and without any explanation for departing from it. The additional procedural safeguard American Trucking seeks is the one the FMCSA had already provided and then disregarded.

135. The evidentiary record on which the FMCSA acted is facially unreliable. Of the thirty-five records the FMCSA attributes to American Trucking, thirty-one are attributed to a location that did not exist on the Registry on the dates of the training alleged. One record is chronologically impossible on its face. Thirty-three of the thirty-five driver-trainees were trained and certified before June 25, 2025, the date on which English language proficiency first became an out-of-service condition. Twenty-eight of the thirty-five were inspected outside the State of Florida. The FMCSA produced only ten inspection reports in support of thirty-five alleged citations. The FMCSA states no rate, threshold, or benchmark, and does not disclose the total number of certificates American Trucking has issued.

136. American Trucking received no pre-deprivation notice of the English-proficiency ground. The operative ground for removal was never communicated to American Trucking before the emergency removal itself.

137. The government's interest does not justify dispensing with due process. The FMCSA claims that public health, interest, or safety required immediate action but the FMCSA's own conduct contradicts any claim of an emergency. On July 14, 2026, an FMCSA CDL Specialist conducted an on-site review of American Trucking and identified no deficiency. On August 12, 2026 the FMCSA closed that investigation in writing. Nineteen days later, and without any further communication of any kind, the FMCSA removed American Trucking from the Registry and effectively shut down all three of its locations for all purposes. The evidence relied upon by FMCSA is fraught with errors and unreliable. During the nineteen-day interval between the on-site review of American Trucking's facility and its removal from the TPR, no new inspection occurred. Less drastic alternatives were available, including notice and an opportunity to respond, and interim monitoring.

138. As a direct result of the Defendants' actions, American Trucking has been substantially damaged and continues to suffer irreparable damage on a daily basis without any meaningful opportunity to be heard before its complete property interest and business enterprise are destroyed.

**COUNT V**
**ULTRA VIRES AGENCY ACTION**
**(American Trucking, LLC)**

139. American Trucking incorporates by reference all of the allegations in paragraphs 1, 4 – 7, 10 – 24, 40 – 78, 80 – 81 and 124 - 137 above in support of its claim for ultra vires agency action against the Defendants as if fully set forth herein.

140. Both Notices of Emergency Removal identify 49 U.S.C. § 31305(c)(5) as the statutory authority for the action taken. That provision directs that the Secretary "shall issue final regulations establishing minimum entry-level training requirements," including regulations "requiring a training provider … that offers training that results in the issuance of a certification … to demonstrate that the training meets the requirements of the regulations, through a process established by the Secretary."

141. Section 31305(c)(5) is a rulemaking directive. It commands the Secretary to establish a process. It confers no authority to remove a training provider from the Registry in an individual adjudication, and it confers no emergency authority of any kind. The only process the Secretary established pursuant to that command is the removal process codified at 49 C.F.R. § 380.723, and that process requires a notification of proposed removal, a thirty-day opportunity to respond, and an opportunity to take corrective action before a provider is removed.

142. Independently, an agency is bound by its own regulations for so long as they remain in force and may not depart from them in an individual case. *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The FMCSA initiated a process against American Trucking. It issued a Notice of Investigation on July 10, 2026, conducted that investigation on July 14, 2026, and closed it on August 12, 2026, with a written determination that American Trucking "has taken the necessary steps to remain listed on the Training Provider Registry" and that "no further action is required at this time." *See* Notice of No Further Action, attached hereto as **Exhibit G**.

143. Although the FMCSA investigated American Trucking and closed that investigation in writing, it never commenced the removal process its own regulation prescribes.

144. In removing American Trucking without a notification of proposed removal under 49 C.F.R. § 380.723(b), without any statement of the ground relied upon, and without any opportunity to respond or to take corrective action, the FMCSA acted outside the only authority Congress conferred and outside the only process the Secretary established under it. The agency did not misapply its regulation; it exercised an adjudicatory removal power that the statute it invoked does not confer.

145. Furthermore, Title 49 C.F.R. § 380.723(e) permits emergency removal of a training provider from the TPR only in cases of "fraud, criminal behavior, or willful disregard of the regulations in this subpart or in which public health, interest, or safety requires."

146. No fraud has been alleged against American Trucking. The Notice of Emergency Removal does not allege that American Trucking engaged in fraud.

147. No criminal behavior has been alleged against American Trucking. The Notice of Emergency Removal does not allege that American Trucking engaged in criminal behavior.

148. The finding of willful disregard by American Trucking cannot stand against the FMCSA's own record. Willfulness requires knowledge of the obligation and disregard of it. The last thing the FMCSA told American Trucking before removing it was that it had taken the necessary steps to remain listed on the Registry. *See* Notice of No Further Action, attached hereto as **Exhibit G**. A provider cannot willfully disregard a requirement that the agency has certified in writing, nineteen days earlier, that the provider is meeting. Willful disregard has not been and cannot be established as to American Trucking. The FMCSA's own regulations do not require that ELDT instruction be provided in English. American Trucking cannot have willfully disregarded a requirement that, by the FMCSA's own concession, does not exist.

149. No genuine emergency existed. On July 14, 2026 the FMCSA inspected American Trucking on site and found no deficiency. On August 12, 2026 it closed that investigation in writing. Nineteen days later it removed American Trucking from the Registry. In the interval between the July 14, 2026 on-site inspection and the August 31, 2026 removal, no new inspection,

no new evidence and no intervening event occurred. That sequence is fundamentally inconsistent with a belief that immediate emergency action was required.

150. Federal agencies possess only the authority Congress has conferred upon them, and a federal district court has jurisdiction over an original suit to set aside agency action taken in excess of the agency's delegated powers. *Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958). "Both [an agency's] power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires." *City of Arlington v. FCC*, 569 U.S. 290, 296-97 (2013).

151. Because the statutory predicates for emergency removal under 49 C.F.R. § 380.723(e) were not met, the Defendants acted beyond the scope of their delegated authority with respect to American Trucking.

152. As a direct result of the Defendants' actions, American Trucking has been substantially damaged and continues to suffer irreparable damage on a daily basis without any meaningful opportunity to be heard before its complete property interest and business enterprise are destroyed.

**COUNT VI**
**REQUEST FOR EMERGENCY INJUNCTIVE RELIEF**
**(American Trucking, LLC)**

153. American Trucking incorporates by reference all the allegations in paragraphs 1, 4 – 7, 10 – 24, 40 – 78, 80 – 81, 124 -137, and 140 – 151 above in support of its claim for emergency injunctive relief against the Defendants as if fully set forth herein.

154. American Trucking seeks a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) and a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a), restoring American Trucking's listing on the TPR pending final resolution of this action.

155. A plaintiff seeking a temporary restraining order or preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent injunctive relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an

injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008); *see also Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*).

156. American Trucking is likely to succeed on the merits of both Count IV and Count V. The FMCSA investigated American Trucking under a Notice of Investigation issued July 10, 2026, conducted that investigation on July 14, 2026, and on August 12, 2026 determined in writing that American Trucking had taken the necessary steps to remain listed on the Registry and that no further action was required. It removed American Trucking nineteen days later, on the same facts, without notice and without explanation.

157. Furthermore, the evidentiary dataset upon which the FMCSA relies to support the emergency removal of American Trucking from the TPR is facially flawed. American Trucking received no pre-deprivation notice of the English-proficiency ground. The mass removal of 103 providers in a single afternoon at 3.6-minute intervals is inconsistent with the individualized determination required by due process.

158. Absent injunctive relief, American Trucking will suffer irreparable harm. The emergency removal has completely shut down American Trucking's operations. American Trucking cannot train students, cannot certify driver-trainees, and cannot earn revenue. The loss of students, employees, goodwill, and market position cannot be recovered. Every day of delay compounds irreversible harm. American Trucking faces permanent closure.

159. Because Defendants are agencies and an officer of the United States, and because the United States' waiver of immunity under 5 U.S.C. § 702 extends only to relief other than money damages, no action for damages lies against Defendants for the losses described above. The injury is therefore irreparable not merely because it is severe, but because it is as a matter of law uncompensable.

160. The balance of equities tips decisively in American Trucking's favor. American Trucking faces total destruction of its business—an existential harm. Defendants face, at most, a temporary administrative inconvenience. The balance of total business destruction against temporary administrative inconvenience is not close.

161. An injunction serves the public interest. The public interest favors lawful agency action, constitutional due process, and accurate regulatory enforcement. The public interest also favors maintaining available ELDT training capacity for commercial drivers.

162. As a direct result of the Defendants' actions, American Trucking has been substantially damaged and continues to suffer irreparable damage on a daily basis without any meaningful opportunity to be heard before its complete property interest and business enterprise are destroyed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Metropolitan Trucking Inc. and American Trucking, LLC respectfully request that this Court grant the following relief:

(a) Issue a temporary restraining order immediately restoring Plaintiffs' listings on the Training Provider Registry pending a hearing on the motion for preliminary injunction or alternatively postponing the effective date of the removal;

(b) An order directing removal from the public Registry record of any designation regarding Plaintiffs which indicates emergency or involuntary removal;

(c) Issue a preliminary injunction maintaining Plaintiffs' listings on the Training Provider Registry pending final resolution of this action;

(d) A declaration that certificates of completion issued by Plaintiffs before August 31, 2026 remain valid and shall not be rejected, revoked or re-examined on the ground of the removal, so that driver-trainees who completed training in reliance on Plaintiffs' listing are not separately penalized;

(e) Enter judgment in favor of Plaintiffs and vacate the FMCSA's August 31, 2026 emergency removal of Plaintiffs from the Training Provider Registry as unlawful, ultra vires, and in violation of the Due Process Clause of the Fifth Amendment;

(f) Award Plaintiffs their costs and attorneys' fees under 28 U.S.C. § 2412 or as otherwise permitted by law;

(g) Grant such other and further relief as this Court deems just and proper.

Dated: September 18, 2026

Respectfully submitted,

*/s/ Ralf R. Rodriguez*
Ralf R. Rodriguez, Esq.
Florida Bar No: 138053
FOX ROTHSCHILD LLP
2 S. Biscayne Boulevard, Suite 2750
Miami, FL 33131
Telephone: 786-501-7361
Email: ralfrodriguez@foxrothschild.com

*Counsel for Plaintiffs Metropolitan Trucking Inc. and American Trucking, LLC*

**VERIFICATION**

I, Magdiel Fernandez, am the Director of Operations of Metropolitan Trucking Inc. and American Trucking, LLC., and make this verification on behalf of Metropolitan Trucking, Inc. and American Trucking, LLC. from my own knowledge except where otherwise stated.

I have read the foregoing First Amended Verified Complaint and verify that the factual allegations are true and correct of my own personal knowledge unless I specifically state they are made on information and belief, which I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Date: September 18, 2026

DocuSigned by:
05B459EABC0641D...
Magdiel Fernandez